THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FLEMON HOWARD, Defendant-Appellant.

First District (3rd Division)  No. 1—88—2792

Opinion filed July 15, 1992.

Michael J. Pelletier, Janice Lynn Triptow, and James E. Chadd, all of
State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Gregory Vaci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendant Flemon Howard was charged with two counts of murder and one count of armed violence. After a jury trial, Howard was convicted for the murder of Richard Rainey and sentenced to 30 years in prison.

At trial, defense counsel indicated that the defendant Howard never intended to kill Rainey and that the stabbing was a reckless act. On appeal, defendant raises three issues: (1) defendant was denied a fair trial due to the prejudicial remarks of the prosecutor made during closing argument; (2) defendant was denied effective assistance of counsel where defense counsel failed to tender a jury instruction defining "recklessness" and defendant's mental state was a central issue in the case; and (3) the sentence imposed was excessive, in view of mitigating factors and rehabilitative potential.

Defendant Howard lived across the street from Richard Rainey. At trial, defendant stated that he had been best friends with the victim for approximately 16 years. On the evening of January 17, 1987, Howard, along with another man and five women, went to a restaurant around 4 a.m. They had previously been drinking at a nearby bar from midnight until closing. While at the restaurant, two unidentified males began verbally harassing the women who were with the defendant. Defendant asked them to stop and then became engaged in a fist fight with one of the two men. During the fight, the other man dropped a knife. Defendant retrieved the knife and put it in his pocket.

After the fight, defendant drove home, parking his car on Adams Street, one block west of his house, located at 4337 West Jackson. While walking to his house, defendant noticed that the two men, with whom he had just fought, were following him. Instead of going to his own house, defendant went to a house at 4326 West Jackson, where Rainey lives in the basement. In order to awaken Rainey, defendant knocked on the basement window causing it to break. Rainey asked defendant why he had broken the window and then crossed the street with the defendant. Defendant explained what had happened earlier and pointed to the two men, who were then approaching the defendant and Rainey. Defendant took the knife from his pocket, which he had from the previous fight and Rainey grabbed defendant in a "bear

hug" in order to prevent another fight. Defendant was very upset and intoxicated. After defendant broke away from Rainey, the two men fled the scene. Rainey picked up a stick and gestured angrily at the defendant for having broken his basement window. Defendant then hit Rainey with the hand containing the knife. Rainey stumbled backwards gasping and fell to the ground.

Defendant testified that he became scared and went to the corner of Jackson and Kostner Streets to call the police from a public phone. While standing near the phone, defendant flagged an unmarked squad car and told the officers that he was sick and needed to go to a hospital. During the earlier fight, defendant had injured his right hand, which had been previously broken. Defendant subsequently refused help and walked away from the officers.

The only eyewitness to the stabbing was the victim's niece, Karen Rainey, who lived on the first floor of the victim's house. Karen Rainey testified at trial that she was awakened by the footsteps of her uncle, Richard Rainey, coming up the basement stairs. She heard him shouting at the defendant about the broken window. She then looked out the front window of the house and saw her uncle walking arm and arm with the defendant, whom she has known since childhood. She could hear the defendant yelling and the two men crossed the street. She could only see the defendant's back and her uncle, Richard Rainey, was standing on the curb facing her. The defendant was hollering and motioning with both hands. She then saw the defendant take a step towards Richard Rainey, his hand moved and then he walked away. Richard Rainey then fell to the ground. She called the police and then crossed the street, where she found the motionless body of Richard Rainey. She also testified that the defendant and her uncle were friends and they saw each other almost every day.

The medical examiner testified that the victim suffered a stab wound to the neck, approximately one-half inch long and two inches deep. The wound perforated the left lung and penetrated the main blood vessel to the heart. Each chest cavity contained approximately one liter of blood.

Assistant State's Attorney Lori Levin testified that the defendant rendered two different accounts as to the events. The first account was consistent with the defendant's trial testimony. Levin then told the defendant that Karen Rainey had witnessed the stabbing and that Karen only saw two people, the defendant and Richard Rainey, in front of the house that evening. Defendant then stated that no one had followed him home. He went to Richard Rainey's house because he was upset about the restaurant fight. Rainey walked across the

street with him to calm him down. He then pointed at Rainey's chest and stabbed him. Rainey staggered a couple of steps and then collapsed. He then flagged down a police car to aid Richard Rainey.

■ On appeal, defendant contends the State's closing argument was unduly prejudicial, denying him a fair trial. As a threshold matter, defendant failed to specifically list the objectionable statements in a post-trial motion. In order to preserve an issue on appeal, a party must make a contemporaneous objection at trial and raise it in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant's post-trial motion contained a form objection, generally alleging that the closing-argument statements of the prosecutor were "inflammatory and erroneous *** designed to arouse the prejudices and passions of the jury." Such a lack of specificity in the post-trial motion fails to preserve the issue for review. (See *People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.) However, where the evidence is closely balanced and the verdict would not have been the same absent the alleged errors, we may still reverse under the doctrine of *plain error*. Because we consider this to be a close case, we will review the alleged errors of the prosecutor in closing.

■ First, the State argued there was no conspiracy among the State, its witnesses and the police. It has been held to be reversible error, where a prosecutor instructs the jury that it *must find* the State's witnesses are lying in order to believe the defendant. (*People v. Cole* (1980), 80 Ill. App. 3d 1105, 1108, 400 N.E.2d 931, 933.) The statements cited by the defendant in his brief refer to a conspiracy but are not as strong as the remarks in *Cole*. In addition, the State claims its remarks about a conspiracy were an "invited response" to defense counsel's comment that the State's counsel were "war dogs." We agree.

■ The comments by defense counsel during closing accused the prosecution of being "war dogs" and implied that they were only interested in winning the case and not in discovering the truth. The State was entitled to defend itself against the defense's accusations. In a like case, the defense counsel implied that a State's witness was engaged in a conspiracy against the defendant. The court held that where defense counsel invites a rebuttal, it is neither improper nor prejudicial. *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1335.

■ The second series of remarks by the prosecutor were unsolicited comments about the defense of manslaughter. Just prior to the retirement of the jury, the prosecutor stated:

"Ladies and gentlemen, involuntary manslaughter does not apply; it is a cop-out and I don't want to insult anyone but it is a cop-out in this case. The evidence is clear and we ask you to find him guilty of murder. Thank you."

In *People v. Wilson* (1983), 120 Ill. App. 3d 950, 961, 458 N.E.2d 1081, 1089, the prosecutor repeatedly referred to the insanity defense as a "smoke screen" and implied it was not a proper defense in a rape case. The court held this to be a misstatement of the law and "grossly improper." The court also commented on the *cumulative effect* of the errors, stating that they cast doubt on the defendant's defense.

In the case *sub judice*, there is not a scintilla of evidence to support the prosecutor's conclusion that involuntary manslaughter did "not apply" and was a "cop-out." The defendant and the victim were best friends for more than a decade. Indeed, it was this friendship which prompted the defendant to visit the home of the victim after a prior altercation with two strange men. When the defendant encountered the victim, he was intoxicated and very upset. He accidentally broke the defendant's window, while trying to awaken him in the early morning hours. The only witness to the encounter was Karen Rainey, the victim's niece, who overheard her uncle yelling about the broken window. She then saw the two men cross the street, still arguing, their arms in the air. She could only see the defendant's back, then his hand moved towards the victim and he fell to the ground. This corroborated the testimony of the defendant, except he claimed that Richard Rainey picked up a stick and began gesturing at him, angry about the broken window. Defendant then swung at the victim with the hand containing the knife. A stick was later found at the scene.

The only issue to be decided by the jury was whether or not the defendant's actions and mental state supported a verdict of murder or involuntary manslaughter. The prosecutor's suggestions to the jury that involuntary manslaughter was inapplicable and a "cop-out" were highly improper. While the prosecutor's comments, standing alone, may not have been reversible error, when considered in light of the subsequent failure of the defense counsel to tender a jury instruction on involuntary manslaughter, the cumulative effect of these errors may have influenced the outcome in this case.

The second issue raised on appeal is whether the defendant was denied effective assistance of counsel for failure to tender a jury instruction defining "recklessness." Defense counsel tendered Illinois Pattern Jury Instructions, Criminal, No. 7.07 (2d ed. 1981) (hereinaf-

ter IPI Criminal 2d), the definitional instruction on involuntary manslaughter:

"A person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual by acts which are performed recklessly and are likely to cause death or great bodily harm to another."

The committee note beneath the instruction states that IPI Criminal 2d No. 5.01, defining "recklessness," is to be given with IPI Criminal 2d No. 7.07. In asking this court to find reversible error, the defendant relies upon *People v. Bolden* (1968), 103 Ill. App. 2d 377, 243 N.E.2d 687. In *Bolden,* the evidence was closely balanced, where the victim was stabbed by the defendant during a game of "tough" (*i.e.,* fencing with knives). The only issue was whether the stabbing was murder or involuntary manslaughter. The definition of involuntary manslaughter read to the jury omitted the phrase "the act must be performed recklessly."

The court found the failure to mention or define the mental state of recklessness, one of the essential elements of involuntary manslaughter, was prejudicial error and deprived the defendant of a fair trial. In the case at hand, the mental state, recklessness, was mentioned in the definition of manslaughter, but it was never defined for the jury. The defense argues this was prejudicial since many jurors may have thought that recklessness meant ordinary negligence and therefore they chose murder, the only alternative.

The State relies on *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233, wherein the supreme court found failure to tender the definition of "recklessly" in conjunction with involuntary manslaughter was not a substantial defect, where there was no substantial prejudice to the defendant. In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish: (1) the defense counsel's performance deviated from an objective standard of reasonableness; and (2) the defendant was substantially prejudiced by the alleged errors, such that the verdict would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

The instant case is distinguishable from *Carlson* in several respects. First, the *Carlson* court rested its holding on *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513. In *Underwood,* the defendant stabbed the victim three times and the central issue in the case was whether the defendant justifiably acted in self-defense. A definitional instruction on self-defense was tendered to the jury stating: "A person is justified in the use of force when and to the extent

that he *reasonably believes* that such conduct is necessary to defend himself ***." (Emphasis in original.) (72 Ill. 2d at 128, 378 N.E.2d at 515.) An IPI instruction defining "reasonably believes" as "acting as a reasonable man, believes that the described fact exists" was neither tendered nor read to the jury by the court *sua sponte*. The court noted that, absent a substantial defect in the jury instructions, the court is under no obligation to give an instruction *sua sponte* which has not been tendered by counsel. A "substantial defect" exists where the failure to tender the instruction resulted in an unfair trial. 72 Ill. 2d at 129-30, 378 N.E.2d at 515.

In *Underwood*, an additional instruction, defining "reasonably believes," would not have changed the outcome of the case. On two occasions, the jury was instructed as to the law on self-defense. Moreover, the words "reasonably believes" are meant to be understood by their common meaning. A term which is employed in a general, nontechnical context need not be defined as long as nothing in the instruction obscures its meaning. This is especially true where the applicable Illinois instruction does not instruct that an additional definition is necessary. (*People v. Hicks* (1987), 162 Ill. App. 3d 707, 713, 516 N.E.2d 807, 812.) In the present case, the IPI instruction on involuntary manslaughter specifically refers to the definitional instruction of "recklessness," which should accompany it. Moreover, "recklessness" may be commonly understood by a lay person to mean ordinary negligence. A juror, concluding that the defendant's acts were more than negligent, may have chosen murder, which was the only alternative presented. In actuality, IPI Criminal 2d No. 5.01 defines recklessness as a state of gross negligence or a "gross deviation from the standard of care which a reasonable person would exercise in such a situation."

In addition, the *Carlson* case is factually distinguishable. The evidence does not overwhelmingly support a verdict of murder in this case. Here, the evidence is closely balanced, involving only one witness, Karen Rainey, the niece of the victim. Moreover, this involves a single stab wound inflicted during a heated conversation between the defendant and the victim, who was his best friend. *Carlson* involved a defendant who had just murdered his wife and when approached by police to be arrested, he began shooting, in the presence of many witnesses. In pleading involuntary manslaughter rather than murder, he based his defense on the theory that he pulled out the gun to shoot himself, not the officers.

Based upon the specific facts in this case, we find that the improper closing remarks of the prosecutor, referring to involuntary manslaughter as a "cop-out," and the failure of the court to define

the mental state of recklessness for the jury constituted reversible error. We cannot conclude that, absent these errors, the verdict in this case would have been the same. We, therefore, reverse and remand for a new trial.

Reversed and remanded.

RIZZI, J., concurs.

JUSTICE CERDA, dissenting:
I dissent because I do not believe defendant was denied effective assistance of counsel for failure to tender a jury instruction defining "recklessness." I would affirm.

*People v. Bolden* (1968), 103 Ill. App. 2d 377, 243 N.E.2d 687, is distinguishable from this case because the jury instruction given omitted any criminal intent or mental state, not just the definition of "recklessness." The involuntary manslaughter instruction which is given in *Bolden* was as follows:

"The Court instructs the jury, in the language of the statute, that a person who kills an individual without lawful justification, commits involuntary manslaughter if his acts, whether lawful or unlawful, which cause the death, are such as are likely to cause death or great bodily harm to some individual."

*Bolden,* 103 Ill. App. 2d at 379-80.

The instruction failed to contain the concluding portion of section 9—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a)), which stated:

"and he performs them (the criminal acts) recklessly." *Bolden,* 103 Ill. App. 2d at 380.

There was a complete omission of the word "reckless" in the *Bolden* involuntary manslaughter instruction. Since the issue of defendant's concurring recklessness or lack of it was never presented to the jury in any of the instructions, the court ruled that the omission of any mental state in the jury instruction prejudiced defendant. (*Bolden,* 103 Ill. App. 2d at 381.) *Bolden* is distinguishable from both *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233, and this case.

In *Carlson,* the attorney for defendant did not tender an instruction defining "recklessly." The court stated it viewed *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513, as controlling on this point. (*Carlson,* 79 Ill. 2d at 583.) The court further stated: "In *Underwood* the failure was not to instruct on an essential element of

the case but was only a failure to give a definitional instruction on the meaning of 'reasonably believes' as used in the self-defense instruction which was given in that case. We held that the failure to *sua sponte* give the definitional instruction was not error. The same reasoning applies here." (*Carlson*, 79 Ill. 2d at 584.) The court further stated that counsel's failure to present the jury instruction defining "recklessly" did not result in substantial prejudice. *Carlson*, 79 Ill. 2d at 585.

In this case the jury was instructed on the essential elements involving involuntary manslaughter including mental state. The definition of "recklessly" has not been held to be an essential element that must be given where there is an issue of involuntary manslaughter. The failure of the attorney for defendant to submit the definitional instruction did not result in an unfair trial.

I would affirm the conviction.