NO. 4-99-1043

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v.      ) Jersey County

RICKY E. CALLAHAN, ) No. 97CF147 

Defendant-Appellant. ) 

                      ) Honorable

) Ronald F. Robinson,

) Judge Presiding.

_______________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

A jury convicted defendant, Ricky Callahan, of first degree murder and four counts of armed violence.  The trial court sentenced him to a term of natural life imprisonment for the murder conviction and 30 years for each conviction for armed violence, to be served consecutively to each other and to the sentence of natural life.  Defendant appeals, raising the following contentions:  (1) the trial court erred in allowing the State to file additional charges on the eve of trial and defense counsel was ineffective in failing to object to the filing of the armed violence charges on speedy-trial grounds; (2) defense counsel was ineffective for failing to tender a jury instruction defining "recklessness" after tendering a jury instruction for involuntary manslaughter; (3) the record shows no valid waiver of defendant's 
Miranda
 rights (see 
Miranda v. Arizona
, 384 U.S.436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)); (4) imposition of a natural life sentence under section 5-8-1(a)(1)(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-1(a)(1)(b) (West 1996)) violated defendant's right to due process under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)); (5) the mandatory consecutive sentencing provisions under section 5-8-4(a) of the Unified Code (730 ILCS 5/5-8-4(a) (West 1996)) are unconstitutional under 
Apprendi
; (6) the discretionary consecutive sentencing provisions under section 5-8-4(b) of the Unified Code (730 ILCS 5/5-8-4(b) (West 1996)) are unconstitutional under 
Apprendi
; (7) the truth-in-sentencing provision contained in section 3-6-3(a) of the Unified Code (730 ILCS 5/3-6-3(a)(iii) (West 1996) (requiring trial court to find conduct resulted in great bodily harm to a victim)) is unconstitutional under 
Apprendi
; (8) imposing consecutive sentences on a natural life sentence was improper as a matter of law; and (9) a sentence of natural life was excessive and inappropriate as a matter of law.  We affirm defendant's conviction for first degree murder but modify his sentence
; we reverse his convictions for armed violence; and we remand with directions.

I. FACTS 

In January 1998, the State charged defendant by indictment with first degree murder (720 ILCS 5/9-1(a)(2) (West 1996)) for the December 27, 1997, stabbing death of Ronald Haenitsch, the attempt (first degree murder) of Steven Garrett, David Almasey, Jennifer Williams, and Michael Talley
 (720 ILCS 5/8-4(a), 9-1(a)(2) (West 1996)), and criminal damage to state-supported property (720 ILCS 5/21-4(A) (West 1996)).  In May 1999, the State also charged him with eight counts of armed violence (720 ILCS 5/33A-2 (West 1996)) for stabbing injuries that same day to Steven Garrett, David Almasey, Jennifer Williams, and Michael Talley
; eight counts of aggravated battery (720 ILCS 5/12-4(a), (b)(8) (West 1996)); and two counts of attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 1996)) based on the same series of events.  A jury trial was held in July 1999 on the murder charge and the four counts of armed violence.

Shortly after 12 a.m. on December 27, 1997, Jerseyville police responded to a call concerning an altercation at Lorton's Hotel Restaurant and Bar in Jerseyville.  Officers arrived to find a scuffle outside the bar involving defendant and several other men and placed defendant in custody in a squad car.  Inside the bar, they found a large crowd of people, several of whom were injured.  Haenitsch, the murder victim, lay on the floor of the bar.  A knife was found on the ground outside near the entrance to the bar. 

Defendant, a patron of the bar, was rebuffed by a woman with whom he wished to dance.  The woman's brother intervened and told defendant, "Hey, man she said no."  Defendant withdrew to his table but then approached the brother and scratched him twice on the neck with the tip of a knife.  In response to the bartender's request, two patrons then escorted defendant to the exit door of the bar.  Defendant appeared willing to leave but then turned back into the crowd and, in a punching motion, stabbed four other patrons.  One died and the other three were injured.  

Defendant then left the bar, ran across the street, and returned still carrying a bloody knife in his hand, with the blade sticking between his fingers and the palm of his hand.  Several patrons struggled with defendant, took him to the pavement, and disarmed him.  The police then arrived.

Twelve witnesses testified in varying detail to these events.  None of the witnesses knew defendant prior to December 27, 1997, and none testified to anyone provoking defendant.

The parties stipulated deoxyribonucleic acid (DNA) testing revealed blood on the knife was Talley's and blood on defendant's jeans was Jennifer Williams'.  A fingerprint on the knife was Zachariah Czaia's.  The parties also stipulated medical evidence indicated wounds found on Almasey, Williams, Talley, and Garrett were consistent with stab wounds inflicted by a knife.  An autopsy on Haenitsch indicated the cause of death to be a single stab wound to the chest, which perforated his heart.

Several witnesses testified for defendant about the amount of alcohol he consumed on December 26 and his actions that afternoon and evening.  Defendant asserted a defense of voluntary intoxication and presented an expert psychologist, Dr. Richard Wetzel, who testified that, on the night in question, defendant did not have the ability to form the intent to kill or seriously harm someone.  The State called a psychiatrist, Dr. Kevin Miller, in rebuttal.  Dr. Miller testified he did not believe defendant to have been legally intoxicated on the night in question, and he opined that defendant's actions were intentional and purposeful.  

Jerseyville police officer Frank Scoggins testified he interviewed defendant at the police station after his arrest.  Defendant told him he was in the front bar area and rest room of Lorton's but never in the nightclub area where the crimes occurred and he had no problem with anyone there.  Defendant told Scoggins he drank four to five Crown and Coke beverages that evening.  He twice inquired whether Scoggins had "pulled a knife off of him" when he was arrested.

The jury deliberated on the foregoing evidence and returned verdicts of guilty on one count of first degree murder and four counts of armed violence.  

The trial court held a sentencing hearing on September 2, 1999.  The court found no factors in mitigation.  In aggravation, the court noted defendant's conduct caused serious harm; he had a history of criminal activity; he inflicted severe bodily injury; he attacked five people in the span of only a few seconds, causing death to one and great bodily harm to the other four; the attacks occurred in a public place against unsuspecting individuals minding their own business; the attacks were random and without reason; defendant was not subject to rehabilitation; defendant did not exhibit any remorse; defendant offered no help to his victims but fled the scene; and the randomness of the murder was indicative of brutal and heinous behavior indicating wanton cruelty.  It then sentenced defendant to natural life for the murder conviction and consecutive 30-year prison terms on each of the four armed violence offenses, to be served consecutively to the term of natural life.

Defendant filed a motion to reduce sentence on September 21, 1999, which the trial court denied on December 21, 1999.  This appeal  followed.

II. ANALYSIS

A. Ineffectiveness of Counsel in Failing To Move To Dismiss Late Filed Additional Charges on Speedy-Trial Grounds

Defendant remained in custody from his arrest on December 27, 1997, until his trial.  A speedy-trial demand pursuant to section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 1996)) was filed by defense counsel on January 6, 1998, requiring defendant be brought to trial within 120 days of the date he was taken into custody.  Numerous continuances occurred, and trial was finally set for May 25, 1999.  At a pretrial hearing on May 13, 1999, the State indicated it would be filing additional charges later that date.  The 20 new charges were brought to the attention of the trial court at the next pretrial hearing on May 20, 1999.  The trial court noted these charges could have been filed over a year before as they were based on the same actions as the original charges of first degree murder and attempt (first degree murder) which were filed in early 1998.  Both the State and defense counsel agreed with the court.  The State also agreed with the trial court's assessment the charges were not included offenses and defendant would be entitled to a preliminary hearing.  

Defense counsel made no objection to the filing of the charges despite being filed on the eve of trial.  The trial court allowed them to be filed.  After they were filed, defense counsel made no motion to dismiss the new charges on speedy-trial grounds.  The trial was continued until July 19, 1999.

On appeal, defendant argues defense counsel was ineffective for failing to move to dismiss the newly filed charges on speedy-trial grounds.  The standard of review for assessing ineffective assistance of counsel is the two-pronged test set forth in 
Strickland v. Washington
, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984), as adopted by 
People v. Albanese
, 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, 1255-56 (1984), in which a defendant must show counsel's performance was objectively deficient and defendant was prejudiced by such deficiency.  He must show counsel made errors so serious he was not functioning as the "counsel" guaranteed under the sixth amendment.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  To establish prejudice, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The rule regarding speedy-trial considerations on later-filed charges was set forth in 
People v. Williams
, 94 Ill. App. 3d 241, 248-49, 418 N.E.2d 840, 846 (1981):  

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges.  Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained."

Counsel's failure to move for a speedy-trial discharge of the new and additional charges under these circumstances may constitute ineffective assistance of counsel.  
People v. Stanley
, 266 Ill. App. 3d 307, 310, 641 N.E.2d 1224, 1226 (
1994).

Where charges are required to be brought in a single prosecution under the compulsory-joinder provisions of section 3-3(b) of the Criminal Code of 1961 (720 ILCS 5/3-3(b) (West 1996)), the speedy-trial period begins to run when the speedy- trial demand is filed even if the State brings some charges at a later date.  
People v. Quigley
, 183 Ill. 2d 1, 13, 697 N.E.2d 735, 741 (1998).  The later filing date for some charges cannot be used to "restart" the speedy-trial period, and any delay occasioned by the late filing is not attributable to the defendant.  The State is required to bring a defendant to trial on all charges within the original speedy-trial term.  The new charges "relate back" to the date the original charges were filed.  
People v. Gooden
, 189 Ill. 2d 209, 222, 725 N.E.2d 1248, 1255 (2000).

Included offenses that are charged later are not subject to the 
Williams
 rule.  An indictment for a particular offense serves as an indictment for all included offenses, and the later-filed included offenses are not "new and additional" charges.  They are deemed to have been before the court when earlier continuances were granted.  
People v. Dressler
, 317 Ill. App. 3d 379, 387, 739 N.E.2d 630, 637 (
2000) (Third District).  

The State elected to go to trial on just four of the later-filed charges, armed violence, and the original first degree murder charge.  The armed violence counts arose from the same acts as the original charges and the facts were long known by the State.  The armed violence counts were filed after the 120 days of the speedy-trial term had expired.  None of the continuances granted prior to filing of the armed violence charges would then be attributable to defendant under the 
Williams
 rule, and the charges would be amenable to dismissal on speedy-trial grounds unless the later-filed charges were included offenses.

The State argues armed violence is an included offense of attempt (first degree murder) and, as such, is not barred by the speedy-trial rule set forth in 
Williams
.

To determine whether an offense is an included offense of another, the supreme court has endorsed the "charging-instrument" approach.  
People v. McLaurin
, 184 Ill. 2d 58, 104, 703 N.E.2d 11, 33 (1998).  The instrument charging the greater offense must, at a minimum, set out the main outline of the lesser offense.  
McLaurin
, 184 Ill. 2d at 104-05, 703 N.E.2d at 33; 
People v. White
, 311 Ill. App. 3d 374, 386, 724 N.E.2d 572, 582 (2000).
  A charging instrument setting forth the "main outline" of an offense includes allegations of all the essential elements of that offense.  See  
McLaurin
, 184 Ill. 2d at 105, 703 N.E.2d at 33; 
White
, 311 Ill. App. 3d at 386-87, 724 N.E.2d at 582.

Where the State has charged two different offenses and is required to prove an additional element to obtain a conviction of one of the offenses as alleged in the charging instrument, that offense cannot be an included offense of the other.  
People v. Lindsey
, 324 Ill. App. 3d 193, 201, 753 N.E.2d 1270, 1277 (
2001).  Even though the language of the two offenses as charged may be similar, the presence of an element found in one offense but not in the other prevents one from being an included offense of the other.  
People v. Priest
, 297 Ill. App. 3d 797, 804, 698 N.E.2d 223, 228 (1998).

The State cites 
People v. Bowens
, 307 Ill. App. 3d 484, 718 N.E.2d 602 (
1999) (First District), in support of its argument that armed violence is an included offense of attempt (first degree murder).  In 
Bowens
, the court found armed violence, 
as
 
charged
 
by
 
the
 
State
, is an included offense of attempt (first degree murder).  
Bowens
, 307 Ill. App. 3d at 495, 718 N.E.2d at 610.  In 
Bowens
, both charges stated the defendant, while armed with a knife, stabbed the victim in the throat and repeatedly kicked the victim about the head and neck.  For the armed violence charge, the aggravated battery on which it was predicated was based on defendant's alleged intent and knowledge his actions would cause bodily harm and permanent disability to the victim.  
Bowens
, 307 Ill. App. 3d at 495, 718 N.E.2d at 610-11.

Specifically, the attempt (first degree murder) charge in 
Bowens
 alleged:

"’
[H]e without legal justification [and] with intent to commit the offense of first degree murder intentionally and knowingly attempted to kill [the victim] by cutting [the victim] on or about the throat area with a knife and kicked [the victim] repeatedly about the head, face[,] and neck area.’"  
Bowens
, 307 Ill. App. 3d at 495, 718 N.E.2d at 610-11 (quoting count I of indictment).

The armed violence charged in 
Bowens
 alleged:

"'[W]hile armed with a dangerous weapon, to wit: a knife, [he] committed the offense of aggravated battery' by 'kicking [the victim] repeatedly about the head, face[,] and neck area and stabbing [the victim] in the neck with a knife *** without legal justification' and with the intent and knowledge that his actions would cause 'bodily harm and permanent disability' to the victim."  
Bowens
, 307 Ill. App. 3d at 495, 718 N.E.2d at 611 (quoting counts IV and V of indictment).

The court in 
Bowens
 noted that to allege the offense of armed violence, all that was needed was to substitute the defendant's "intent and knowledge" his actions would cause bodily harm in the armed violence count for his intent to kill his victim in the attempt (first degree murder) count.  The fact the victim would have suffered bodily injury as a result of the defendant's actions was implicit in the attempt (first degree murder) charge.  
Bowens
, 307 Ill. App. 3d at 495, 718 N.E.2d at 611.

In this case, the State added two sets of armed violence charges after the speedy-trial date had passed.  The first set of armed violence charges alleged as follows:

"[D]efendant, while armed with a knife with  a blade of at least three inches in length, performed an act prohibited by Illinois Compiled Statutes [,] Chapter 720, Act 5[,] Section 12-4(a), being Aggravated Battery, in that defendant 
struck 
[
the
 
victim
]
 in 
[
the neck/lower abdomen/posterior lower back
] 
with said knife, thereby causing great bodily harm to 
[
the victim
]."  (Emphasis added.)

The other set of armed violence charges alleged:

"[D]efendant, while armed with a knife with a blade of at least three inches in length, performed an act prohibited by Illinois Compiled Statutes [,] Chapter 720, Act 5 [,]  section 12-4(b)(8), being Aggravated Battery, in that defendant 
struck
 [
the victim
]
 in 
[
the neck/lower abdomen/posterior lower back
]
 with said knife
, while [the victim] was at the Lorton's Hotel Restaurant & Bar, a public place of amusement."  (Emphasis added.)

The attempt (first degree murder) charge in this case alleged:

"[D]efendant, with the intent to commit the offense of Murder in violation of section 9-1(a)(2) of Act 5 of Chapter 720 of the Illinois [C]ompiled Statutes, performed a substantial step toward the commission of the offense, in that said defendant, without lawful justification, 
struck 
[
the victim
]
 in 
[
the neck/lower abdomen/posterior lower back
]
 with a knife
, knowing such act created a strong probability of death to the [the victim], 
thereby causing great bodily harm to 
[
the victim
], in violation of Chapter 720, Act 5, Section 8-4(a) of the Illinois Compiled Statutes."  (Emphases added.)

The State elected to go to trial solely on the armed violence counts predicated on aggravated battery alleging defendant struck the victims with a knife in excess of three inches while in a public place of amusement.  These armed violence charges contained the elements "armed with a knife with a blade of at least three inches in length" and that the acts of defendant occurred "while [the victim] was at *** a public place of amusement."  These elements 
were
 
not
 contained in the attempt (first degree murder) charge and, thus, were not required to be proved for a conviction of attempt (first degree murder).  Therefore, armed violence was not an included offense of attempt (first degree murder) 
as
 
charged
 
by
 
the
 
State
.

Because the charging-instrument approach is the analysis endorsed by the supreme court in determining whether an offense is included in another offense, it does not matter whether those additional elements were actually at issue at trial.       

Failure to move to dismiss the armed violence counts on speedy-trial grounds was prejudicial to defendant because dismissal on that ground would properly have been granted, and defendant would not have been convicted of four counts of armed violence.  Therefore, he received ineffective assistance of counsel, and his convictions on four counts of armed violence are reversed.

B. Ineffectiveness of Counsel for Failure To Tender Jury Instruction Defining Recklessness

   

The jury instruction for involuntary manslaughter (Illinois Pattern Jury Instructions, Criminal, No. 7.07 (
3d ed. 1992) (hereinafter IPI Criminal 3d)) was tendered by the State and given by the court.  That instruction reads:

"A person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual *** by acts which are performed recklessly and are likely to cause death or great bodily harm to another."  IPI Criminal
 3d No. 7.07, at 168.  

The committee note beneath this instruction states that IPI Criminal 
3d No. 5.01 defining "recklessness" is to be given with IPI Criminal 
3d No. 7.07.  IPI Criminal 
3d No. 7.07, Committee Note, at 168.  No instruction defining "recklessness" was tendered by either party or given by the court.

Defendant argues defense counsel was ineffective in failing to tender IPI Criminal 
3d No. 5.01, defining the mental state of recklessness, one of the essential elements of involuntary manslaughter, as the failure to do was prejudicial error.  Defendant cites 
People v. Howard
, 232 Ill. App. 3d 386, 597 N.E.2d 703 (1992), and 
People v. Bolden
, 103 Ill. App. 2d 377, 243 N.E.2d 687 (1968).  

In 
Howard
, reversible error was found where the jury instruction for involuntary manslaughter was given but not the instruction defining recklessness.  
Howard
, 232 Ill. App. 3d at 392-93, 597 N.E.2d at 708.  However, the court also found the evidence was closely balanced and the prosecutor made an improper closing argument.  
Howard
, 232 Ill. App. 3d at 392, 597 N.E.2d at 708.

In 
Bolden
, 103 Ill. App. 2d at 379-80, 243 N.E.2d at 689, the involuntary manslaughter instruction itself omitted any reference to the act having to be performed recklessly.  The 
Bolden
 court found the failure to mention and define the mental state of recklessness, one of the essential elements of involuntary manslaughter, was prejudicial error.  
Bolden
, 103 Ill. App. 2d at 382, 243 N.E.2d at 690.  The court also found the evidence to have been closely balanced.

Where the evidence is not closely balanced, no prejudice could have resulted, and defense counsel's failure to tender the jury instruction defining recklessness has been found not to be ineffective representation.  
People v. Lake
, 298 Ill. App. 3d 50, 54-55, 697 N.E.2d 1147, 1150-51 (1998).

The evidence here was not closely balanced.  Defendant's actions were not reckless but voluntary and willful with the natural tendency to cause death or great bodily harm.  After being rebuffed in attempting to dance with a woman, defendant returned to his table.  After some time passed, he cut the woman's brother twice in the neck and started to leave.  Instead, he returned quickly through the bar and stabbed people along the way.  He held his knife against the palm of his hand with the blade between his fingers.  He did not swing wildly with the knife, but punched his victims with great force.  The fatal blow to Haenitsch sank five inches into his chest and penetrated his heart.  

Despite defendant's assertion on appeal that the primary issue at trial was whether his actions were reckless or intentional, the focus at trial was on his affirmative defense of voluntary intoxication.  The case did not hinge on 
which
 mental state defendant possessed but on whether he was intoxicated and 
without
 the requisite mental state.

Defendant did not seriously contest the issue of whether his actions constituted involuntary manslaughter or first degree murder.  We find defense counsel's failure to tender the jury instruction defining recklessness along with the tendered instruction for involuntary manslaughter was harmless beyond a reasonable doubt.

C. 
Valid Waiver of Defendant's 
Miranda
 Rights

After defendant was arrested, he was interrogated at the police station.  Officer Scoggins read him his 
Miranda
 rights. 
 Defendant acknowledged he understood his rights.  Officer Scoggins did not read the last item on the "
Miranda
 rights" card prepared by the Jerseyville police department:  "Knowing these rights, do you want to talk to me without having a lawyer present?  You may stop talking to me at any time and you may also demand a lawyer at any time."

Defendant argues he did not waive his rights before he spoke to Officer Scoggins because he was not asked if he wished to waive them and he did not otherwise state he was waiving them.  He does not contend he was not advised of his rights or that he did not understand them.  He asserts only that he made no valid waiver because it was not expressed.

The trial court denied defendant's motion to suppress the statements made to Officer Scoggins.  The State contends defendant waived this argument on appeal as he did not include it in a posttrial motion, as required by 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).  We agree and find the argument has been waived.

D. Imposition of Natural Life Sentence Under 

Section 5-8-1(a)(1)(b) of the Unified Code Violated

Defendant's Right to Due Process Under 
Apprendi
 

The trial court sentenced defendant to natural life in prison for first degree murder and consecutive terms on each of four counts of armed violence.  Under Illinois law, punishment for first degree murder is normally imprisonment for a term of not less than 20 nor more than 60 years.  730 ILCS 5/5-8-1(a)(1)(a) (West 1996).  However, the trial court can sentence a defendant to natural life if it finds the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  730 ILCS 5/5-8-1(a)(1)(b) (West 1996).

Defendant argues this sentencing procedure is unconstitutional because the enhancing factor (brutality and wanton cruelty) was not charged, submitted to the jury, and proved beyond a reasonable doubt.  In support of his position he relies on 
Apprendi
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. 

The general rule of 
Apprendi
 is as follows:

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Defendant asserts the first degree murder charge of which he was convicted did not include the additional "facts" or "elements" of brutality and wanton cruelty found by the trial court and used to enhance his sentence beyond the normal, statutory maximum penalty.  Thus, the imposition of his sentence of natural life in prison violated 
Apprendi
.

The majority of Illinois Appellate Court decisions have held 
Apprendi
 prohibits a trial court in a noncapital case from imposing a sentence beyond the normal range merely because it finds the defendant engaged in exceptionally brutal or heinous behavior if that aggravating factor is not submitted to a jury and proved beyond a reasonable doubt.  See 
People v. Johnson
, No. 5-99-0637, slip op. at 7-8 (October 23, 2001), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___ (Fifth District); 
People v. Bryant
, 325 Ill. App. 3d 448, 457, 758 N.E.2d 430, 437-38 (2001) (First District, Fourth Division); 
People v. Nitz
, 319 Ill. App. 3d 949, 968, 747 N.E.2d 38, 54 (2001) (Fifth District); 
People v. Chanthaloth
, 318 Ill. App. 3d 806, 816, 743 N.E.2d 1043, 1050 (2001) (Second District).  In these cases, the findings of brutality and wanton cruelty improperly increased the defendants' exposure to greater punishment.  As noted by the court in 
Nitz
, the trial judge made a factual finding that increased the range of penalties, thus increasing defendant's exposure to punishment.  
Nitz
, 319 Ill. App. 3d at 967, 747 N.E.2d at 53.  

In addition, a majority of decisions have applied this reasoning to first degree murder cases where the death penalty was not sought by the State.  See 
People v. Reynolds
, 327 Ill. App. 3d 1027, 1034-35, 764 N.E.2d 1135, 1140-41 (2002) (First District, Fifth Division); 
People v. Lee
, 319 Ill. App. 3d 289, 307-08, 745 N.E.2d 78, 93 (2001) (First District, Third Division); 
People v Armstrong
, 318 Ill. App. 3d 607, 619, 743 N.E.2d 215, 224 (2000) (First District, Second Division); 
People v. Kaczmarek
, 318 Ill. App. 3d 340, 353-54, 741 N.E.2d 1131, 1143 (2000) (First District, Third Division); 
People v. Lee
, 318 Ill. App. 3d 417, 422-23, 743 N.E.2d 1019, 1023 (2000) (First District, Fourth Division). 

We recognize at least two courts have used a different analysis and found the sentencing scheme in Illinois not to be violative of 
Apprendi
.  Following a jury trial, the defendant in  
People v. Vida
, 323 Ill. App. 3d 554, 557, 752 N.E.2d 614, 618 (2001) (First District, Sixth Division), 
was convicted of first degree murder and was sentenced by the court to an extended term of 100 years in prison under section 5-8-2(a)(1) of the Unified Code (730 ILCS 5/5-8-2(a)(1) (West 1998)).  The 
Vida
 court found the maximum sentence for first degree murder, absent special findings necessary to impose the death penalty, is natural life in prison.  
Vida
, 323 Ill. App. 3d at 569, 752 N.E.2d at 627.  The court in 
Vida
 criticized other courts for holding 60 years was the maximum allowable sentence for first degree murder because those courts failed to read sections 5-8-1(a)(1)(a), 5-8-1(a)(1)(b), and 5-8-2(a)(1) of the Unified Code together as part of a complete sentencing scheme that provides for natural life and extended-term sentences for first degree murder, with natural life as the statutory maximum sentence for first degree murder.  
Vida
, 323 Ill. App. 3d at 570, 752 N.E.2d at 628.  Thus, a finding of exceptional brutality does not increase a punishment's range beyond the maximum statutory penalty.  
Vida
, 323 Ill. App. 3d at 572, 752 N.E.2d at 630.  The 100-year sentence imposed was not beyond the statutory maximum and, hence, not violative of 
Apprendi
.  
Vida
, 323 Ill. App. 3d at 572-73, 752 N.E.2d at 630; see also 
People v. Rivera
, No. 2-98-1662, slip op. at 12-14 (December 5, 2001), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___ (Second District); 
contra
 
People v. Joyner
, 317 Ill. App. 3d 93, 110, 739 N.E.2d 594, 606-07 (2000) (Second District (Rapp, J., joined by Geiger and Colwell, JJ.), 
overruled
 
in
 
relevant
 
part
 
in
 
Rivera
, No. 2-98-1662 (December 5, 2001), 
___ Ill. App. 3d ___, ___ N.E.2d ___.  

We agree with the court in 
Johnson
 and find the analysis of 
Vida
 less than convincing.  A defendant's guarantee of a trial by jury requires the facts necessary to the determination of a statutory maximum penalty are required to be submitted to a jury.  The question of whether a crime is accompanied by exceptionally brutal or heinous behavior calls for the determination that the defendant's crime is qualitatively different from the crime charged.  A trial judge can consider the nature of an individual's offense in exercising sentencing discretion but it is an entirely different question when the sentencing law requires a judge to make an additional finding of fact about behavior accompanying an offense that renders it deserving of more punishment.  
Johnson
, slip op. at 3, ___ Ill. App. 3d at ___, ___  N.E.2d at ___.

We hold the trial judge's finding that defendant's behavior was exceptionally brutal and indicative of wanton cruelty was an element that should have been charged and submitted to the jury.  The State needed to allege it in the charging instrument and prove it beyond a reasonable doubt.  Accordingly, we modify defendant's sentence for first degree murder to a 60-year determinate prison term, the maximum sentence the law allows on the facts charged and proved beyond a reasonable doubt.

III. CONCLUSION

As we have reversed defendant's convictions for armed violence, his 30-year consecutive sentences for those convictions are also reversed.  Thus, defendant's arguments regarding the application of 
Apprendi
 to consecutive sentencing, the application of 
Apprendi
 to truth-in-sentencing provisions, and the propriety of imposing consecutive sentences on natural life sentences are moot. Since we have also reduced defendant's sentence from natural life to a determinate 60-year prison term, defendant's final argument on his sentence of natural life being excessive and inappropriate is also moot.

We affirm defendant's conviction for first degree murder but modify the sentence of natural life imprisonment to 60 years' imprisonment, we reverse defendant's convictions for armed violence, and we remand for issuance of an amended written judgment of sentence.

Affirmed in part as modified and reversed in part; cause remanded with directions.  

McCULLOUGH, P.J., concurs.

STEIGMANN, J., specially concurs in part and dissents in part.

JUSTICE STEIGMANN, specially concurring in part and dissenting in part:

I agree with the majority's decision except its conclusion that defendant received ineffective assistance of counsel when his trial counsel failed to move for dismissal of the armed violence counts on speedy-trial grounds.  In fact, had counsel made such a motion, the trial court should have denied it.  As the State correctly points out, that ruling would have been appropriate because the armed violence charges were lesser included offenses of the attempt (first degree murder) charges the State originally filed.

The majority cites 
Dressler
, which states that the so-called 
Williams
 rule does not apply where later-filed charges describe lesser included offenses.  
Dressler
, 317 Ill. App. 3d at 387, 739 N.E.2d at 637.  That is exactly what happened in this case.  

In 
Bowens
, 307 Ill. App. 3d at 487, 718 N.E.2d at 605, the First District Appellate Court needed to determine whether the entry of multiple convictions against the defendant was proper where those convictions included attempt (first degree murder) and armed violence.  As in this case, the convictions arose out of a stabbing incident.  The First District concluded that the multiple convictions could not stand because the armed violence counts were lesser included offenses of attempt (first degree murder).  
Bowens
, 307 Ill. App. 3d at 495, 718 N.E.2d at 610-11.  The analysis in 
Bowens
 is sound, and this court should follow it here. 

Further, it must be remembered that this matter comes before us on a claim of plain error (that the trial court erred by permitting the State to file the four new counts of armed violence) or, alternatively, ineffective assistance of counsel (because defendant's trial counsel failed to object to the State's request to file these additional charges).  I conclude neither applies.

From trial counsel's point of view, he was asserting the only available defense (voluntary intoxication), given the overwhelming case against his client.  The State had already charged his client with attempt (first degree murder) concerning the four victims who were similarly named in the newly added armed violence counts.  It is certainly not clear to me that no reasonable lawyer would have failed to object to the filing of these new counts.  Similarly, I have serious difficulty finding any prejudicial effect since, as earlier stated, the State was entitled to file these charges because they were lesser included offenses.  

Accordingly, I respectfully dissent from the majority's decision to vacate defendant's convictions for armed violence.