THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ORRIN DRESSLER, Defendant-Appellant.

Third District   No. 3—98—0048

Opinion filed November 13, 2000.

Orrin D. Dressler, of Ina, appellant *pro se.*

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

A jury found defendant Orrin Dressler guilty of robbery, armed robbery, kidnaping, aggravated kidnaping with a canister of Mace, aggravated stalking and theft (720 ILCS 5/18—1(a), 18—2(a), 10—1(a)(1), 10—2(a)(5), 12—7.4(a)(2), 16—1(a)(1)(A) (West 1996)). The jury found defendant not guilty of aggravated kidnaping with a gun. The judge imposed consecutive sentences of 14 and 11 years for armed robbery and aggravated kidnaping, respectively, and concurrent 5-year sentences for aggravated stalking and theft to run concurrently with the longer sentences. No sentences were imposed for robbery and kidnaping. Defendant raises the following issues on appeal: (1) whether the trial court erred in denying defendant's motion to suppress evidence; (2) whether Mace is a "dangerous weapon" that can support a charge of aggravated kidnaping; (3) whether the court erroneously denied defendant's motion to dismiss charges of kidnaping and theft on speedy trial grounds; (4) whether the State failed to prove a material element of aggravated stalking; (5) whether the trial court erred in overruling defendant's objection to a tape-recorded 9-1-1 call; (6) whether the prosecution of kidnaping and aggravated kidnaping was barred by principles of double jeopardy; (7) whether all charges should have been dismissed for violation of defendant's speedy trial rights; and (8) whether there was a fatal variation between the charges for theft, robbery, armed robbery and aggravated stalking and the proof at trial. We vacate defendant's convictions for aggravated kidnaping, robbery and theft and the sentences imposed for aggravated kidnaping and theft. In all other respects, we affirm. We remand the cause for sentencing on kidnaping.

## FACTS AND PROCEDURAL CONTEXT

On February 23, 1996, a search warrant was issued for defendant and the premises he occupied at 11245 South Joliet Road in Lemont, Illinois. The warrant authorized seizure of items allegedly used in the kidnaping, aggravated kidnaping, unlawful restraint and aggravated unlawful restraint of defendant's ex-wife, Cook County Sheriff's Deputy Mary Jo Senese. The warrant specified the following items: a lady's purse and contents, a Smith and Wesson .357 revolver, a Cook County sheriff's deputy star, car keys for a Toyota, handcuffs and chains. That same day, the police executed the warrant and arrested defendant. He was held without bond on charges of armed robbery, aggravated kidnaping (two counts), robbery, aggravated stalking, unlawful use of a weapon and violation of an order of protection.

On April 22, 1996, the date the cause was initially set for trial, defendant moved for a continuance, which was granted. The trial was also continued on defendant's motion on May 14 and August 19, 1996.

On September 23, 1996, defendant moved to suppress based on the allegedly unlawful seizure of items not specified in the February 23 search warrant. At the hearing on the motion, the police testified that their search of the house in Lemont failed to uncover the gun, purse and star specified in the warrant. However, during the course of their search, the officers found and seized numerous other items from drawers, closets and cabinets which they believed to have evidentiary value. Such items included a wig, which an investigator believed the defendant used as a disguise; a notebook with dated entries naming the victim; a microcassette tape from an answering machine; adult videotapes; and a stack of nude photographs. The officers explained that they thought the videotapes and the photographs might be of value in establishing defendant's "mind set." After taking the matter under advisement, the trial court denied the motion to suppress.

On December 18, 1996, the State filed an amended indictment in 12 counts charging the original felony charges and several new charges, including theft, kidnaping and unlawful possession of explosives. Following several more continuances, defendant moved for a discharge based on violations of his right to a speedy trial. The court denied the motion. Prior to trial, charges of unlawful possession of weapons and explosives were severed. On August 25, 1997, the cause proceeded to trial on the seven remaining felony counts.

Mary Jo Senese testified that she obtained an order of protection against defendant during divorce proceedings that commenced in June of 1995. On the morning of July 28, she filed a complaint in Will County alleging that defendant violated an order of protection because he failed to return certain personal property to her. That evening, while Senese was walking between the garage and her condominium, defendant drove his car toward her at a high rate of speed and nearly hit her.

Around 6:45 a.m. on February 23, 1996, as Senese was about to enter her car to go to work, a man whom she did not recognize grabbed her, sprayed Mace in her face and forced her into a vehicle. During the ensuing struggle, Senese pulled a wig off the man and recognized the defendant. Defendant handcuffed Senese's hands behind her and removed her service revolver. Defendant then drove her to the house in Lemont, where he handcuffed and chained her to the wall in a small, cement-block room in the basement.

After defendant left the house, Senese worked one handcuff loose and broke another. She proceeded upstairs and called 9-1-1. Over

defendant's objection, the tape-recorded 9-1-1 call was played to the jury. The court admonished the jury that the evidence was to be considered solely to show the witness' state of mind at the time.

Senese said she left the house through the bathroom window before the police arrived and ran to a business on the adjoining property. Store manager Karen Bartleman testified that Senese, whom she did not know, entered the business around 11:45 a.m. with handcuffs on both wrists and a heavy chain hanging from one of the cuffs. Bartleman summoned help.

Later that day, after the police had secured defendant's house in anticipation of a search warrant, defendant drove up. He was immediately arrested. Police officers testified that after the warrant arrived, they reentered the house and seized numerous items, including an officer's gun belt and miscellaneous items consistent with the contents of a woman's purse, from the small room in the basement. In a bedroom closet, the officers found a brown wig. They also found a notebook with dated entries, a case containing handcuffs and a small canister of Mace personal defense spray in a dresser drawer. Senese's revolver was subsequently turned over to the police in April 1996 by defendant's son, Robert, who said he found it in the house under defendant's bed.

After the State rested, defendant testified on his own behalf. He admitted that he drove by Senese's condominium in Orland Park on the evening of July 28, 1995, but he denied that he tried to hit her with his car. He said that on February 23, 1996, he got up around 7 a.m. and worked in his office until around 10:30 a.m., when he left for a doctor's appointment. He said that a friend, Susan Katauskas, stopped by around 9 a.m. and left a pound cake. When he returned to the house later that day, he encountered the police and was arrested. He admitted that the dated-entry notebook was a journal of his daily activities, but he denied committing any of the February 23, 1996, offenses alleged by Senese. Katauskas corroborated defendant's testimony with respect to her visit on the morning of February 23.

During jury deliberations, the jurors asked to review the 9-1-1 call. Over defendant's objection, the court played the tape again and repeated its admonishment that the evidence was to be considered only to show the caller's state of mind. The jury subsequently returned verdicts finding defendant guilty of all charges except aggravated kidnaping while armed with a gun.

Convictions were entered and defendant was sentenced.

## ISSUES AND ANALYSIS

### I. Search Warrant

Defendant first contends that the trial court erred in denying his

motion to suppress evidence, because certain items not specified on the face of the search warrant were seized even though their evidentiary value was not readily apparent. Defendant claims that he was prejudiced by the admission into evidence of some of these items, particularly the wig and the dated-entry notebook. The State argues that the items were properly seized under the plain view exception to the fourth amendment's warrant requirement.

■ The fourth amendment protects against the issuance of search warrants that grant the police broad discretion to conduct a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 29 L. Ed. 2d 564, 583, 91 S. Ct. 2022, 2038 (1971). However, under the plain view doctrine, a police investigator with prior justification for an intrusion is entitled to seize evidence that is in plain view, so long as such evidence is of an "apparently incriminating nature." *People v. Stewart*, 105 Ill. 2d 22, 52, 473 N.E.2d 840, 855 (1984). An item is in plain view if it is found during the search of an area that could contain or conceal articles listed on the face of the warrant. *People v. Edwards*, 144 Ill. 2d 108, 579 N.E.2d 336 (1991). Because the question of the legality of the seizure of the items in this case depended in part on the credibility of witnesses, we give deference to the trial court's ruling and will not reverse unless the ruling was manifestly erroneous. *Stewart*, 105 Ill. 2d 22, 473 N.E.2d 840.

■ Initially, we note that at the time the contested items were seized, the victim's gun, star and purse had not yet been found. The officers testified that all of the items seized outside the scope of the warrant were located in places that could have accommodated the gun, star and purse. Under the circumstances, all of the items in dispute were in "plain view." See *Edwards*, 144 Ill. 2d 108, 579 N.E.2d 336.

Further, evidence at the suppression hearing established that the search warrant and information available to the officers executing it provided the victim's name and the fact that defendant may have disguised himself during the commission of the offenses. Because the wig could have been used as a disguise, it was an item of apparently incriminating nature.

The officers were also justified in seizing the dated-entry notebook. The officers testified that the notebook lay open when it was found in the dresser drawer. They observed Senese's name in the notebook and saw that it chronicled defendant's surveillance of Senese on dates close in time to the offense; to the officers, it appeared to be incriminating evidence of the kidnaping offense cited on the face of the warrant.

Defendant does not argue that he was prejudiced by the warrant-less seizure of other items. Accordingly, we hold that the trial court did not err in denying defendant's motion to suppress evidence.

## II. Aggravated Kidnaping Based on Use of Mace

■ Next, defendant argues that his conviction for aggravated kidnaping cannot stand because a canister of Mace is not a "dangerous weapon" as contemplated by the statute defining the offense.

Section 10—2(a)(5) of the Criminal Code of 1961 (Code) states that "[a] kidnaper *** is guilty of the offense of aggravated kidnaping when he *** [c]ommits the offense of kidnaping while armed with a dangerous weapon, as defined in Section 33A—1 of the 'Criminal Code of 1961.' " 720 ILCS 5/10—2(a)(5) (West 1996). Section 33A—1 defines "dangerous weapons" as those objects that fall within any one of three categories. 720 ILCS 5/33A—1(a) (West 1996). Category I weapons are firearms—handguns, sawed-off shotguns, sawed-off rifles, other firearms small enough to be concealed upon a person, semiautomatic firearms and machine guns. Category II weapons are other firearms, knives, daggers, dirks, switchblades, stilettos, axes, hatchets or "other deadly or dangerous weapon[s] or instrument[s] of like character." 720 ILCS 5/33A—1(b) (West 1996). Category III weapons are bludgeons, blackjacks, slungshots, sandbags, sand clubs, metal knuckles, billies, "or other dangerous weapon[s] of like character." 720 ILCS 5/33A—1(c) (West 1996).

A canister of Mace cannot arguably fit into any of the foregoing categories of dangerous weapons. It does not fire penetrating projectiles (Category I); it cannot be used to cut the victim (Category II); and it cannot be used to enhance a beating (Category III). Therefore, though noxious sprays may be "dangerous weapons" for purposes of armed robbery (see *People v. Elliott*, 299 Ill. App. 3d 766, 702 N.E.2d 643 (1998)), they do not qualify as such for purposes of aggravated kidnaping. Armed robbery does not depend the definition of dangerous weapons contained in section 33A—1. Defendant's conviction for aggravated kidnaping based on the use of Mace must be vacated.

## III. Speedy Trial of New Charges in Amended Indictment

Next, defendant argues that he was entitled to a speedy trial discharge with respect to the charges of theft and kidnaping, because the State failed to bring him to trial on these charges within 120 days of his arrest.

■ A defendant's right to a speedy trial is guaranteed by the sixth amendment and the due process clause of the Constitution of the United States. U.S. Const., amends. VI, XIV. It is further preserved by

section 103—5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5 (West 1996)). By statute, an accused shall be tried within 120 days from the date he was taken into custody unless delay is caused by the accused. 725 ILCS 103—5(a) (West 1996). When, as in this case, new and additional charges are brought which are required by the compulsory joinder act (720 ILCS 5/3—3 (West 1996)) to be prosecuted together with the original charges, the speedy trial period for the new charges relates back to the original charges. *People v. Quigley*, 183 Ill. 2d 1, 697 N.E.2d 735 (1998); *People v. Gooden*, 189 Ill. 2d 209, 725 N.E.2d 1248 (2000). However, in computing the period with respect to the new charges, continuances obtained by the defendant in connection with the original charges are not attributed to the defendant "because these new and additional charges were not before the court when those continuances were obtained." *People v. Williams*, 94 Ill. App. 3d 241, 248-49, 418 N.E.2d 840, 846 (1981).

## A. Kidnaping

■ The question raised by the State in this case is whether theft and kidnaping were "new and additional charges" subject to the speedy trial computation envisioned by *Williams*. An indictment for a particular offense serves as an indictment for all included offenses, even though the latter are not specifically set forth in the indictment. *People v. Gulley*, 162 Ill. App. 3d 545, 515 N.E.2d 1309 (1987). Thus, a conviction for a lesser offense may be sustained even if the State only charges the greater offense. For purposes of this rule, every element of the lesser offense must be included in the greater, charged offense. *Gulley*, 162 Ill. App. 3d 545, 515 N.E.2d 1309.

■ In this case, kidnaping was, by definition, a lesser-included offense of aggravated kidnaping. The original indictment charging aggravated kidnaping served as an indictment for kidnaping; therefore, the included offense of kidnaping was before the court when defendant obtained continuances in connection with the original charges. Kidnaping was not a "new and additional" charge when the State filed its amended indictment; thus, defendant is chargeable with all delay occasioned by him between February 23, 1996, when he was taken into custody, and August 19, 1997, when the cause proceeded to trial. Since defendant's trial commenced within the 120-day statutory speedy trial period, the trial court correctly denied defendant's motion to dismiss the kidnaping charge on speedy trial grounds.

## B. Theft and Robbery

■ Defendant argues that his theft conviction should be vacated because theft is a lesser-included offense of armed robbery. We agree. Theft, a specific intent offense, is an included offense of general intent

armed robbery for purposes of double jeopardy, compulsory joinder and one-act, one-crime analyses. *People v. Jones*, 149 Ill. 2d 288, 595 N.E.2d 1071 (1992); *People v. Eggerman*, 292 Ill. App. 3d 644, 685 N.E.2d 948 (1997); *People v. Milton*, 309 Ill. App. 3d 863, 723 N.E.2d 798 (1999). Thus, if the armed robbery conviction is sustained, this court must vacate the theft conviction under one-act, one-crime principles. See *People v. Garcia*, 179 Ill. 2d 55, 688 N.E.2d 57 (1997).

Since we affirm defendant's armed robbery conviction for the reasons stated in sections V and VI below, we vacate the conviction and sentence entered for the lesser-included offense of theft. *Milton*, 309 Ill. App. 3d 863, 723 N.E.2d 798.

We also note here that defendant's robbery conviction must be vacated as a lesser-included offense of armed robbery. *Garcia*, 179 Ill. 2d 55, 688 N.E.2d 57.

### IV. Venue of Aggravated Stalking Charge

Defendant next contends that the State failed to prove a material element of aggravated stalking, because his conduct of July 28, 1995, did not take place in Will County. On that date, defendant argues, venue was a required element of the offense of stalking; therefore, he posits, his conviction for aggravated stalking, based in part on the July 28 incident, must be reversed.

■ Stalking is committed when a person "knowingly and without lawful justification, on at least 2 separate occasions *** places [another] person under surveillance *** and *** places that person in reasonable apprehension of immediate *** bodily harm, *** confinement or restraint." 720 ILCS 5/12—7.3(a)(2) (West 1996). Aggravated stalking is committed when a person, in conjunction with committing stalking, confines or restrains the victim. 720 ILCS 5/12—7.4(a)(2) (West 1996).

The indictment charging aggravated stalking in this case alleged that defendant stalked Senese by placing her under surveillance and in reasonable apprehension of immediate bodily harm on July 28, 1995, and February 23, 1996, and confining her on February 23, 1996. As alleged, the predicate offense of stalking was not completed until February 23, 1996, the same date that aggravated stalking was committed.

■ The venue statute, which formerly required the State to prove venue as a material element of an offense, was amended effective August 11, 1995. 720 ILCS 5/1—6(a) (West 1996). After that date, the State was not required to prove that an offense occurred in any particular county of the State. *People v. Gallegos*, 293 Ill. App. 3d 873, 689 N.E.2d 223 (1997). In this case, neither stalking nor aggravated stalk-

ing was alleged to have been committed until after the venue statute was amended. Thus, the State was not required to prove that the charged offense occurred in Will County. Defendant is not entitled to a reversal of his aggravated stalking conviction for failure to prove venue.

## V. Admission of 9-1-1 Call

Defendant also argues that the State was improperly allowed to introduce a hearsay audio tape recording of the victim's 9-1-1 call. A declarant's out-of-court statement may be admitted as an exception to the hearsay rule if offered to show the declarant's state of mind at the time of the utterance. *People v. Lawler*, 142 Ill. 2d 548, 568 N.E.2d 895 (1991). To be admissible under the exception, the State was required to show that the declarant's state of mind was relevant to a material issue in the case. *People v. Davis*, 254 Ill. App. 3d 651, 626 N.E.2d 1187 (1993). On review, a trial judge's evidentiary ruling will not be disturbed unless it was an abuse of discretion. *People v. Kidd*, 147 Ill. 2d 510, 591 N.E.2d 431 (1992).

In this case, the trial court admitted the taped 9-1-1 call under the state-of-mind exception and cautioned the jury after it was played both during the trial and during deliberations that it was admitted solely to show the victim's state of mind. The emotional recording was arguably material to the issue of the victim's credibility, which defendant challenged by presenting a defense that he had been set up and framed for an offense that never happened.

Further, even if the recording was improperly admitted, defendant would not be entitled to a new trial. The evidence of defendant's guilt of armed robbery and aggravated stalking and kidnaping was overwhelming, and there is no reasonable probability that the jury would have voted to acquit if the recording had been excluded. See *People v. Trice*, 217 Ill. App. 3d 967, 577 N.E.2d 1195 (1991). Accordingly, no reversible error resulted from its admission into evidence.

## VI. Other Issues

Defendant raises three additional issues which we have reviewed and found to be without merit. Specifically, defendant contends that (1) prosecutions for kidnaping and aggravated kidnaping were in violation of double jeopardy protections, based on prior forfeiture proceedings against the vehicle used in the commission of those offenses; (2) his speedy trial rights were violated with respect to all of the charges in this case; and (3) his convictions for offenses that the State's evidence showed were committed in Cook County must be reversed because of a variation with the indictment, which alleged that all offenses were committed in Will County. Based on our careful

review of applicable law and the record on appeal, we conclude that defendant is not entitled to further relief based on any of the foregoing arguments.

## CONCLUSION

We affirm defendant's convictions for armed robbery, kidnaping and aggravated stalking; we vacate defendant's convictions and sentences for aggravated kidnaping and theft; we vacate defendant's conviction for robbery. Since we have vacated defendant's aggravated kidnaping conviction and affirmed his kidnaping conviction, we remand the cause for sentencing on the kidnaping conviction. See *People v. Claybourn*, 221 Ill. App. 3d 1071, 582 N.E.2d 1347 (1991).

Affirmed in part and vacated in part; cause remanded.

HOLDRIDGE and HOMER, JJ., concur.