# Illinois Official Reports

## Appellate Court

***People v. Larue*, 2014 IL App (4th) 120595**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL T. LARUE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0595 |
| Filed<br>Modified upon denial of rehearing | May 14, 2014<br><br>June 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for unlawful possession of a weapon by a felon and residential burglary, the appellate court held that no speedy-trial violation occurred when the charge of unlawful possession of a weapon by a felon was filed after the speedy-trial term had expired, since all the elements of the added charge were contained in the charge of aggravated unlawful use of a weapon filed before the speedy-trial term expired and defendant was on notice that he had to defend the added charge, and the sentence imposed on defendant for unlawful possession of a weapon by a felon did not violate the proportionate penalties clause, because the offense was not "identical" to aggravated unlawful use of a weapon. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 11-CF-2036; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Michael J. Pelletier, Jacqueline L. Bullard, and Martin J. Ryan, all of State Appellate Defender's Office, of Springfield, for appellant.

Julia Reitz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Presiding Justice Appleton and Justice Turner concurred in the judgment and opinion.

## OPINION

¶ 1      On December 13, 2011, the State charged defendant, Terrell T. Larue, with (1) attempt (armed robbery) (720 ILCS 5/8-4(a), 18-2(a) (West 2010)) (count I); (2) residential burglary (720 ILCS 5/19-3 (West 2010)) (count II); and (3) aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)) (count III). Police arrested defendant on December 12, 2011, and he remained in custody thereafter. On April 27, 2012, over 120 days after defendant's arrest date, the State also charged defendant with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2010)).

¶ 2      Defendant's jury trial began on April 30, 2012, and continued on May 2, 2012. The State elected to proceed only on the residential burglary and UPWF counts. Following the trial, the jury found defendant guilty of both charges. In June 2012, the trial court sentenced defendant to consecutive sentences of 10 years in prison for UPWF and 15 years in prison for residential burglary, ordering defendant to pay the "costs of prosecution herein." Following sentencing, the circuit clerk imposed various fines and fees.

¶ 3      Defendant appeals, arguing (1) his conviction for UPWF must be vacated because the State filed the charge after the 120-day speedy-trial term had run on the original charges; (2) his 10-year sentence for UPWF must be vacated because the sentence violates the proportionate-penalties clause of the Illinois Constitution; (3) his 10-year sentence for UPWF must be vacated because it violates the due process clause of the Illinois Constitution and the equal protection clauses of both the Illinois and United States Constitutions; and (4) the circuit court clerk imposed six void fines and seven duplicate fees that must be vacated.

¶ 4      We affirm in part, vacate in part, and remand with directions.

¶ 5                          I. BACKGROUND

¶ 6      On December 13, 2011, the State charged defendant with (1) attempt (armed robbery) (720 ILCS 5/8-4(a), 18-2(a) (West 2010)) (count I); (2) residential burglary (720 ILCS 5/19-3 (West

2010)) (count II); and (3) AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2010)) (count III), a Class 2 felony carrying a maximum prison sentence of seven years. Defendant was arrested on December 12, 2011, and remained in custody until his trial. On February 7, 2012, the State filed a motion for continuance pursuant to section 103-5(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(c) (West 2010)), requesting additional time to obtain defendant's deoxyribonucleic acid (DNA) sample. The trial court granted the State's motion over defendant's objection. At the next court date, March 20, 2012, the court set defendant's trial for April 9, 2012. On April 3, 2012, the court allowed an agreed motion to vacate the trial setting because defendant's attorney was "under a doctor's care." Thereafter, the court set defendant's trial for April 30, 2012. On April 27, 2012, three days before trial, the State charged defendant with UPWF, a Class 3 felony carrying a possible 2- to 10-year prison sentence (720 ILCS 5/24-1.1(a), (e) (West 2010)) (count IV).

¶ 7                                    A. Defendant's Trial

¶ 8        On April 30, 2012, the parties appeared for defendant's jury trial. Prior to the trial's commencement, the State dismissed counts I and III. Thereafter, the trial commenced. A summary of the evidence presented is as follows.

¶ 9        Timothy McNaught, an Urbana police officer, testified that on December 12, 2011, he was dispatched to apartment 217 of 904 Broadway. When he arrived to apartment 217, McNaught saw the door was ajar and showed obvious signs of having been forced open. The apartment was empty. McNaught then started knocking on other apartment doors and noticed the door to apartment 218 opened and shut quickly. Police ordered the occupants of 218 to come out, and Erik Kirk, Sherrick Cooper, Herbert Shah, Darrell Hubbard, and defendant complied. After the men were handcuffed, patted down, and ushered downstairs, McNaught entered apartment 218, which belonged to Jamie Calhoun, the mother of defendant's child. During a protective sweep, McNaught discovered a gun in a utilities closet next to the furnace. McNaught left the apartment to obtain a search warrant.

¶ 10       Matt Quinley, a detective with the Urbana police department, testified he took part in executing the search warrant at apartment 218. During the search, officers recovered a 32-inch flat screen television (TV). Denee Thomas, who lived in apartment 217, later verified the TV as hers, using a remote control that was still in her apartment to turn it on. The officers also found an Xbox and "a brand new pair of Nike Air Jordans" underneath the kitchen sink. Mathew Vien, an Illinois State Police crime scene investigator, testified he took photographs inside apartment 218 of (1) a pair of size 10 Nike shoes, and (2) two 9-millimeter caliber handguns found on top of the furnace under a T-shirt. One of the guns was a Browning 9-millimeter semiautomatic handgun with the hammer cocked. When Vien unloaded the gun, it contained one round in the chamber and a magazine containing several rounds. The other gun that the officers recovered from the top of the furnace area was a Hi-Point 9-millimeter semiautomatic pistol. That gun also contained one round in the chamber and a magazine containing several rounds.

¶ 11       Brian Willfong, a police officer with the City of Urbana, testified he transported defendant from the 904 Broadway apartments to the Urbana police department. At the station, Willfong

searched defendant and found $1,300 in defendant's left pants pocket. Earlier that day, officers had conducted a traffic stop outside the 904 Broadway apartments, during which they found $1,300 on Kaurente Pettigrew, which they later returned. Hubbard, Kirk, Cooper, Shah, and defendant all watched the officers stop Pettigrew. Pettigrew then went to Thomas's apartment. According to Hubbard's testimony, the men then decided to break into Thomas's apartment to "get some money." Hubbard said he and the four other men then returned to Thomas's apartment, with Hubbard and Shah breaking the apartment door by kicking it in.

¶ 12    David Smysor, an investigator with the Urbana police department, testified he obtained a recorded statement from defendant. The trial court allowed the State to play the recorded statement and to provide the jury with copies of a transcript of the statement. In his statement, defendant denied participating in the robbery and denied that either of the recovered guns belonged to him. He said he remained in Calhoun's apartment the entire time of the robbery and only knew the details of the robbery based on what the other men told him. Defendant saw Hubbard return from Thomas's apartment with a TV and a game system. Defendant said the longer gun that police recovered belonged to Kirk and the shorter one belonged to Cooper. He acknowledged holding Kirk's gun earlier in the day but denied ever handling Cooper's gun. Defendant said he received the $1,300 police found on him from his mom and other family members.

¶ 13    Hubbard first testified he saw only one gun on the night of the robbery, the gun he pled guilty to possessing but did not own. However, he then also said he saw two 9-millimeter guns in Calhoun's apartment, a brown and black one and a black one. Hubbard identified the brown and black gun in court as the one Cooper had. He denied recognizing the gun depicted in People's exhibit No. 32, the Hi-Point 9-millimeter semiautomatic pistol. He said the black gun he remembered seeing was "just on the ground" and had been "passed around." Specifically, he said Kirk touched it, Cooper "probably" touched it, and he did not know whether defendant or Shah touched it. Hubbard testified that when the men went to Thomas's apartment, one of them "probably could have had" a gun but Hubbard did not recall seeing any. Hubbard later denied the men passed around the guns in Calhoun's apartment. On cross-examination, Hubbard said the gun he had was a BB gun. Hubbard denied touching either of the guns depicted in the State's exhibits, and he said none of the men touched his BB gun.

¶ 14    Before pleading guilty, Hubbard had given a taped statement to Quinley, but he testified he did not remember telling Quinley defendant had the gun with the wooden handle. In his recorded statement, which was played for the jury, Hubbard told Quinley that Kirk, Cooper, and defendant each had a gun. He admitted touching one of the guns on an earlier date. He also said that, earlier in the evening, defendant said they needed money and needed "a lick."

¶ 15    Correctional officers Shane McPheron and James Spence each took defendant's fingerprints. John Carnes, an expert in fingerprint examination, testified he could not find any fingerprints suitable for comparison on the guns, shoes, shoebox, or Xbox that officers had recovered from apartment 218. Carnes did, however, find eight fingerprints suitable for comparison on the TV. Carnes opined that six of the prints belonged to defendant.

¶ 16    Following the witnesses' testimony, the trial court took judicial notice of defendant's prior felony conviction of unlawful possession of a controlled substance. Thereafter, the jury found defendant guilty of UPWF and residential burglary.

¶ 17                              B. Sentencing Hearing

¶ 18    In May 2012, defendant filed a motion for a new trial or, in the alternative, for judgment *n.o.v.* At a June 2012 hearing, the trial court denied defendant's motion and proceeded to sentencing. Correctional officers at the county jail testified (1) heroin was found in defendant's cell the day after his arrest; (2) defendant unbolted a stool and used a portion of the stool to dig into concrete and caulking in an attempt to escape; (3) defendant threatened to shoot one of the guards in the mouth; and (4) defendant flooded his cell by stuffing a blanket into the toilet and flushing the toilet. Defendant made a statement, apologizing for the damage to Thomas's home.

¶ 19    The trial court sentenced defendant to 10 years in prison for UPWF and 15 years in prison for residential burglary, ordering the sentences to run consecutively. The court's written sentencing order also required defendant to "pay costs of prosecution herein." In announcing defendant's sentence, the court found defendant's young age to be the only mitigating factor present. In aggravation, the court noted (1) defendant had a prior history of delinquency and criminal activity, and (2) the court needed to deter other individuals from committing a similar crime. The court also pointed out that correctional officers testified defendant brought heroin into the jail, tried to escape, and threatened to shoot an officer in the mouth. A computer printout reveals that, at some point, the circuit clerk imposed various assessments for each of defendant's two convictions, including the following: (1) a $30 juvenile expungement fine (730 ILCS 5/5-9-1.17(a) (West 2010)), (2) a $10 "Traffic/Criminal" fine surcharge (730 ILCS 5/5-9-1(c) (West 2010)), (3) a $10 State Police operations fine (705 ILCS 105/27.3a (West 2010)), (4) a $5 document storage fee, (5) a $10 automation fee, (6) a $100 circuit clerk fee, (7) a $25 court security fee, (8) a $10 arrestee's medical assessment, (9) a $50 court finance fee, and (10) a $40 State's Attorney fee. This appeal followed.

¶ 20                                 II. ANALYSIS

¶ 21    On appeal, defendant argues (1) his conviction for UPWF must be vacated because the State filed the charge after the 120-day speedy-trial term had run on the original charges; (2) his 10-year sentence for UPWF must be vacated because the sentence violates the proportionate-penalties clause of the Illinois Constitution; (3) his 10-year sentence for UPWF must be vacated because it violates the due process clause of the Illinois Constitution and the equal protection clauses of the Illinois and United States Constitutions; and (4) the circuit court clerk imposed six void fines and seven duplicate fines.

¶ 22    Following briefing in this case, we ordered the parties to submit supplemental briefs discussing the effect, if any, that the supreme court's decision in *People v. Aguilar*, 2013 IL 112116, had on defendant's arguments. The parties submitted briefs as requested, agreeing that *Aguilar* has no effect on defendant's arguments because, although the supreme court initially

found the entire AUUW statute unconstitutional in its original *Aguilar* decision, it subsequently modified its opinion upon denial of rehearing to make clear that it was finding only the Class 4 felony form of the AUUW statute unconstitutional. We agree with both parties that *Aguilar*, as modified upon denial of rehearing, has no effect on defendant's arguments. Accordingly, we turn to defendant's arguments.

¶ 23                                         A. Defendant's Speedy-Trial Claim

¶ 24        Defendant first asserts his conviction for UPWF (count IV) must be vacated because the State filed the charge, which was based on the same conduct as AUUW (count III), after the 120-day speedy-trial term had run on the original charges. Defendant acknowledges that he did not object to the UPWF count at trial but argues the speedy-trial issue should be reviewed (1) under the plain-error doctrine or (2) because his attorney was ineffective for failing to object to the additional charge. Whether reviewing the issue for plain error or to determine whether counsel was ineffective, we must first determine whether defendant's speedy-trial right was violated. *People v. Mays*, 2012 IL App (4th) 090840, ¶ 42, 980 N.E.2d 166.

¶ 25        A defendant possesses both constitutional and statutory rights to a speedy trial. *People v. Phipps*, 238 Ill. 2d 54, 65, 933 N.E.2d 1186, 1193 (2010). In this case, defendant asserts only that his statutory right to a speedy trial was violated. Illinois's speedy-trial statute provides that a defendant in custody must be brought to trial within 120 days of the day he was brought into custody. 725 ILCS 5/103-5(a) (West 2010). The speedy-trial statute tolls during any period of delay occasioned by the defendant. *People v. Woodrum*, 223 Ill. 2d 286, 299, 860 N.E.2d 259, 269 (2006). A defendant not tried within the statutory period must be released from custody and have the charges against him dismissed. 725 ILCS 5/103-5(d) (West 2010); *People v. Hunter*, 2013 IL 114100, ¶ 10, 986 N.E.2d 1185.

¶ 26        Pursuant to the compulsory joinder statute (720 ILCS 5/3-3(b) (West 2010)), the State must prosecute in a single criminal case all known offenses within the jurisdiction of a single court that " 'are based on the same act.' " *Hunter*, 2013 IL 114100, ¶ 10, 986 N.E.2d 1185 (quoting 720 ILCS 5/3-3(b) (West 2008)). The Illinois Supreme Court has explained the relationship between the compulsory joinder statute and the speedy-trial statute as follows. "Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges." (Internal quotation marks omitted.) *Hunter*, 2013 IL 114100, ¶ 10, 986 N.E.2d 1185. Where the initial and subsequent charges are subject to compulsory joinder, delays attributable to the defendant on the initial charge are not attributable to the defendant on the new and additional charges " 'because these new and additional charges were not before the court when those continuances were obtained.' " *Phipps*, 238 Ill. 2d at 66, 933 N.E.2d at 1193 (quoting *People v. Williams*, 94 Ill. App. 3d 241, 249, 418 N.E.2d 840, 846 (1981)). The purpose of the so-called *Williams* rule is to prevent "trial by ambush" wherein "[t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges." (Internal quotation marks omitted.) *Woodrum*, 223 Ill. 2d at 300, 860 N.E.2d at 270.

This court has made clear, however, that the *Williams* rule does not apply to included offenses because an indictment for an offense serves as an indictment for all included offenses. *People v. Callahan*, 334 Ill. App. 3d 636, 642, 778 N.E.2d 737, 743 (2002). Thus, included offenses "are deemed to have been before the court when earlier continuances were granted." *Id.*

¶ 27　　Here, the parties dispute whether the later UPWF charge was a "new and additional" charge or merely an included offense of the original AUUW charge. We review *de novo* whether the UPWF charge is new and additional. *Phipps*, 238 Ill. 2d at 67, 933 N.E.2d at 1194. To do so, we must compare the original and subsequent charges. *Id.*

¶ 28　　The State's original charge of AUUW was based on defendant, having previously been convicted of a felony, knowingly carrying on or about his person, when not on his own land or in his own abode or place of business, a firearm that was uncased, loaded, and immediately accessible. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010). The State's later charge of UPWF was based on defendant, after having been convicted of a felony, knowingly possessing on or about his person any firearm. See 720 ILCS 5/24-1.1(a) (West 2010).

¶ 29　　Thus, both the AUUW and UPWF charges were premised on defendant knowingly possessing a firearm after having been previously convicted of a felony. Defendant acknowledges that the conduct alleged in the original count, AUUW, encompassed the conduct alleged in UPWF. However, defendant argues that the State's tactic of substituting UPWF for AUUW three days before trial prejudiced defendant in that it stripped defendant of his defense on the additional element in AUUW not present in UPWF–namely, that the firearm at issue was "uncased, loaded, and immediately accessible." As the State points out, however, an indictment for a particular offense serves an indictment for all included offenses. See *Callahan*, 334 Ill. App. 3d at 642, 778 N.E.2d at 743. What defenses the defendant may or may not have as a result of the subsequent charge is not part of our analysis for purposes of compulsory joinder and the statutory right to a speedy trial. Every element of UPWF is contained within AUUW and it is impossible to commit AUUW without committing UPWF. See *id.* Therefore, the subsequent UPWF charge is not a "new and additional" charge subject to the rule announced in *Williams*. Because the State charged defendant with AUUW, the lesser offense of UPWF was before the court when the court considered requests to continue the case. See *People v. Dressler*, 317 Ill. App. 3d 379, 387, 739 N.E.2d 630, 637 (2000). Moreover, "[t]he question for a speedy-trial analysis is whether defendant had adequate notice of the subsequent charges to allow him to prepare and present a defense." *Mays*, 2012 IL App (4th) 090840, ¶ 45, 980 N.E.2d 166.

¶ 30　　Defendant asserts that based on *Phipps*, we are required to compare the respective penalties of the two charges in determining whether UPWF is a new and additional charge. Defendant argues that because UPWF carries a greater maximum penalty than AUUW, the subsequent charge of UPWF is a new and additional charge. Based on defendant's criminal history, AUUW was a Class 2 felony carrying a prison term of between three and seven years. 720 ILCS 5/24-1.6(d)(3) (West 2010). By contrast, UPWF was a Class 3 felony punishable by a prison sentence of up to 10 years. 720 ILCS 5/24-1.1(e) (West 2010).

¶ 31　　In *Phipps*, the supreme court concluded that the original reckless homicide charge provided defendant adequate notice of the subsequent aggravated driving under the influence

charge. *Phipps*, 238 Ill. 2d at 70, 933 N.E.2d at 1195. In reaching its decision, the supreme court reasoned that the original indictment and subsequent information alleged the same conduct. *Id.* at 68, 933 N.E.2d at 1194. The court went on to note that, as charged by the State, reckless homicide and aggravated driving under the influence "had essentially the same elements and provided the same penalty." *Id.*

¶ 32 Although the supreme court noted the two charges carried the same penalty, the *Phipps* decision makes clear the supreme court's determination turned on whether defendant had notice of the subsequent charge. Indeed, the court stated "[t]he critical point" for its speedy-trial analysis was "whether the original indictment gave defendant adequate notice to prepare his defense to the subsequent charge." *Id.* at 69, 933 N.E.2d at 1195. In applying the same reasoning to our case, we conclude no speedy-trial violation occurred when the State added the UPWF charge because, although UPWF carried a greater maximum sentence, all of the elements of UPWF were contained within AUUW and, thus, defendant was on notice that he should prepare a defense to UPWF. See *People v. Arndt*, 50 Ill. 2d 390, 395, 280 N.E.2d 230, 233 (1972) (the defendant could not claim surprise when the State added a count for involuntary manslaughter because defendant was at all times subject to a conviction for involuntary manslaughter under the original murder charge). Given defendant does not assert that the trial on the original charge took place in violation of his statutory right to a speedy trial, all delays attributable to him on the original charge would apply to the subsequent UPWF charge. Therefore, no speedy-trial violation occurred.

¶ 33 Because no speedy-trial violation occurred, defendant has failed to establish he was prejudiced by counsel's failure to object to or file a motion to dismiss the UPWF charge; thus, we reject defendant's ineffective assistance of counsel claim. *Phipps*, 238 Ill. 2d at 71, 933 N.E.2d at 1196. Likewise, because defendant cannot establish any error occurred, no further plain-error analysis is required. See *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007) (first step under the plain-error doctrine is to determine whether error occurred).

¶ 34                                 B. Defendant's Proportionate-Penalties-Clause Claim

¶ 35 Defendant next asserts his 10-year sentence for UPWF violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Specifically, defendant argues that because UPWF is a lesser-included offense of AUUW but is punished more harshly than AUUW, his 10-year sentence for UPWF must be vacated.

¶ 36 A statute violates the proportionate-penalties-clause of the Illinois Constitution if it contains the same elements as another offense but carries a greater sentence. *People v. Sharpe*, 216 Ill. 2d 481, 521, 839 N.E.2d 492, 517 (2005). This is so because if the legislature determines the exact same elements merit two different punishments, then one of those punishments has not been set according to the seriousness of the offense. *Id.* at 522, 839 N.E.2d at 517.

¶ 37 Defendant acknowledges UPWF and AUUW are not truly "identical." Specifically, AUUW contains an additional element that the defendant's firearm be uncased, immediately

accessible, and loaded. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), 24-1.1(a) (West 2010). This additional element notwithstanding, defendant claims that treating the two offenses as identical for proportionate-penalties purposes is consistent with both the purpose of the proportionate-penalties clause and the supreme court's decision in *Sharpe.* We disagree.

¶ 38　　In *People v. Dunn*, 365 Ill. App. 3d 292, 294-95, 849 N.E.2d 148, 150 (2006), the defendant argued the punishment applicable to predatory criminal sexual assault of a child violated the proportionate-penalties clause because it was harsher than the penalties for offenses with identical elements, namely, predatory criminal sexual assault of a child while armed with a firearm and predatory criminal sexual assault of a child involving the discharge of a firearm. Our court rejected the defendant's argument, concluding the offenses did not have identical elements and, thus, the defendant failed to show the punishment for predatory criminal sexual assault of a child violated the proportionate-penalties clause. *Id.* at 296, 849 N.E.2d at 151. Defendant urges us to overrule our decision in *Dunn* because it relied on *People v. Espinoza*, 184 Ill. 2d 252, 702 N.E.2d 1275 (1998), which did not involve offenses where the lesser-included offense carried a greater penalty than the greater encompassing offense. We decline to overrule *Dunn*, as we find it is consistent with the supreme court's directive in *Sharpe* to abandon cross-comparison proportionate-penalties analysis. See *Sharpe*, 216 Ill. 2d at 519, 839 N.E.2d at 515-16.

¶ 39　　Therefore, we reject defendant's claim that his 10-year sentence for UPWF violates the proportionate-penalties clause.

¶ 40　　　　　　　　C. Defendant's Due Process and Equal Protection Claims

¶ 41　　Defendant next argues his 10-year sentence for UPWF violates the due process clause of the Illinois Constitution and the equal protection clauses of the United States and Illinois Constitutions.

¶ 42　　　　　　　　　　　　1. *Due Process Clause*

¶ 43　　Defendant claims his sentence violates the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) because UPWF is a lesser-included offense of AUUW but is punished more harshly than AUUW.

¶ 44　　"Under the State's police power, the legislature possesses wide discretion in prescribing penalties for defined offenses." *People v. Dixon*, 359 Ill. App. 3d 938, 942, 835 N.E.2d 925, 929 (2005). Nonetheless, "[t]he legislature's power to fix penalties is *** subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law." *People v. Bradley*, 79 Ill. 2d 410, 417, 403 N.E.2d 1029, 1032 (1980). In considering a due process challenge, our inquiry is whether the penalty is reasonably designed to remedy the particular evil that the legislature was targeting. *Sharpe*, 216 Ill. 2d at 523, 839 N.E.2d at 518. We will not invalidate a statute "unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable." (Internal quotation marks omitted.) *Dixon*, 359 Ill. App. 3d at 942, 835 N.E.2d at 929.

¶ 45 Prior to 2000, section 24-1.1(e) provided only that UPWF was a Class 3 felony. 720 ILCS 5/24-1.1(e) (West 1998). Thus, a person convicted of UPWF was subject to a maximum regular sentence of 5 years in prison and a maximum extended-term sentence of 10 years in prison. 730 ILCS 5/5-8-1(a)(6), 5-8-2(a)(5) (West 1998). Public Act 91-544, which became effective on January 1, 2000, modified section 24-1.1(e) to provide that a person guilty of UPWF "if sentenced to a term of imprisonment, shall be sentenced to no less than 2 years and no more than 10 years." Pub. Act 91-544, § 5 (eff. Jan. 1, 2000). Thus, after 2000, a person convicted of UPWF could be subject to a maximum regular sentence of 10 years without the presence of an aggravating factor.

¶ 46 Public Act 91-690, effective April 13, 2000, enacted section 24-1.6 of the Criminal Code of 1961, creating the offense of AUUW. Pub. Act 91-690, § 10 (eff. Apr. 13, 2000). AUUW committed by a felon was a Class 2 felony; thus, a felon convicted of AUUW was subject to a maximum regular sentence of no more than 7 years' imprisonment or a maximum extended-term sentence of no more than 14 years' imprisonment with the presence of an aggravating factor. 720 ILCS 5/24-1.6(d) (West 2000); 730 ILCS 5/5-8-1(a)(5), 5-8-2(a)(4) (West 2000). Eventually, in 2006, the legislature made the prison term for AUUW mandatory. Pub. Act 94-72, § 5 (eff. Jan. 1, 2006). At the time of defendant's offense, a prison term was not mandatory for UPWF. 720 ILCS 5/24-1.1(e) (West 2010); see also *People v. Johnson*, 237 Ill. 2d 81, 98, 927 N.E.2d 1179, 1190 (2010). AUUW carried a mandatory supervised release (MSR) term of two years, while UPWF was subject to a one-year MSR term.

¶ 47 In support of his claim that his 10-year sentence for UPWF violates the due process clause, defendant cites *Bradley*, in which the supreme court found a due process clause violation where possession of a controlled substance was a Class 3 felony subject to an indeterminate sentence of 1 to 10 years but delivery of that same substance was only a Class 4 felony subject to an indeterminate sentence of 1 to 3 years. *Bradley*, 79 Ill. 2d at 414-18, 403 N.E.2d at 1030-32. The supreme court reasoned the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, ¶ 1100 *et seq.* (now 720 ILCS 570/100 *et seq.* (West 2010))) expressly stated the General Assembly's intent was to "penalize most heavily the illicit traffickers or profiteers of controlled substances." (Internal quotation marks omitted.) *Bradley*, 79 Ill. 2d at 418, 403 N.E.2d at 1032. Accordingly, punishing the possession of a controlled substance more harshly than the delivery of that substance directly contravened the express intent of the legislature and violated the due process clause of the Illinois Constitution. *Id.*

¶ 48 Here, defendant has failed to show his sentence for UPWF is contrary to the legislative's intent in enacting the statute. Indeed, unlike *Bradley*, defendant has provided no citation to an express statement of the legislative intent in enacting UPWF or AUUW. Thus, defendant has failed to show the penalty for UPWF is not reasonably designed to remedy the particular evil the legislature was targeting such that a due process violation has occurred.

¶ 49                              2. *Equal Protection Clauses*

¶ 50 Defendant also contends his 10-year sentence for UPWF violates the equal protection clauses of both the Illinois and United States Constitutions (U.S. Const., amend. XIV, § 1; Ill.

Const. 1970, art. I, § 2) because by enacting different sentences for UPWF and AUUW, the legislature is treating those who have committed similar offenses dissimilarly.

¶ 51　The equal protection clause requires the government to treat similarly situated individuals in a similar fashion, unless the government can show an appropriate reason to treat the individuals differently. *People v. Masterson*, 2011 IL 110072, ¶ 24, 958 N.E.2d 686. The applicable level of scrutiny we apply to an equal protection challenge is determined by the nature of the right involved. *Id.* Here, defendant concedes his case does not involve a fundamental right and the individuals at issue here, convicted felons illegally possessing a firearm, are not a suspect class. Thus, we apply a rational basis standard, under which we must determine whether the statute bears a rational relationship to a legitimate government purpose. *Id.*

¶ 52　"[I]t is axiomatic that an equal protection claim requires a showing that the individual raising it is similarly situated to the comparison group." *Id.* ¶ 25, 958 N.E.2d 686. Defendant must make a showing that he is similarly situated to those against whom he seeks comparison. If the defendant is unable to make this showing, his equal protection claim fails and application of the rational basis standard is not required. *Id.*

¶ 53　In *Bradley*, the supreme court rejected the argument that a defendant convicted of possession of a controlled substance was similarly situated to one convicted of delivery of a controlled substance, because "[b]y the very definition of the offenses, those accused of one would be dissimilarly situated from those accused of the other." *Bradley*, 79 Ill. 2d at 417, 403 N.E.2d at 1032. Given that AUUW and UPWF are by their respective definitions different, defendant cannot meet his burden of showing his is similarly situated. Under the holding in *Bradley*, defendant's assertion that one convicted of UPWF is similarly situated to one convicted of AUUW fails.

¶ 54　　　　　D. Defendant's Claims Concerning Void and Duplicate Fines

¶ 55　Finally, defendant argues this court must vacate (1) six fines imposed by the circuit clerk, as the clerk lacked authority to impose the fines, and (2) seven duplicate fees. Further, defendant asserts that, should the trial court impose fines on remand, he should receive $5 *per diem* credit against those fines (725 ILCS 5/110-14 (West 2010)). The State concedes fines must be imposed judicially and that defendant's case should be remanded for judicial imposition of mandatory fines, subject to available incarceration credit, as well as the elimination of duplicate fees. We accept the State's concession in part.

¶ 56　In this case, the trial court ordered only that defendant pay "all costs of prosecution herein." A computer printout, however, reveals that for each of defendant's two convictions, the circuit clerk imposed the following assessments, which constitute fines: (1) a $30 juvenile expungement fine (730 ILCS 5/5-9-1.17(a) (West 2010)) (listed as three separate $10 charges for the State Police Services Fund, State's Attorney's Office Fund, and Circuit Clerk Operation and Administration Fund (730 ILCS 5/5-9-1.17(b) (West 2010))); (2) a $10 "Traffic/Criminal" fine surcharge (730 ILCS 5/5-9-1(c) (West 2010)); and (3) a $10 State Police operations fine (705 ILCS 105/27.3a (West 2010)). Because the imposition of a fine is a judicial act, and the

circuit clerk has no authority to levy fines, any fines imposed by the circuit clerk are void from their inception. *People v. Williams*, 2013 IL App (4th) 120313, ¶ 16, 991 N.E.2d 914. Thus, we vacate the circuit clerk's assessment of fines.

¶ 57 The clerk also imposed, for each of the two convictions, a $10 arrestee's medical assessment. Although defendant categorizes this assessment as a "fee," we note an arrestee's medical assessment may be imposed regardless of whether a defendant actually incurs an injury requiring medical care. *People v. Unander*, 404 Ill. App. 3d 884, 890, 936 N.E.2d 795, 800 (2010). Therefore, the arrestee's medical assessment is a fine. See *People v. Jake*, 2011 IL App (4th) 090779, ¶ 29, 960 N.E.2d 45 (An assessment is a fee only if it is intended to reimburse the State for a cost incurred in the defendant's prosecution.). Because the circuit clerk lacks authority to impose fines, we vacate the arrestee's medical assessment.

¶ 58 In addition, the clerk imposed the following fees for each of the two convictions: (1) a $5 document storage fee, (2) a $10 automation fee, (3) a $100 circuit clerk fee, (4) a $25 court security fee, (5) a $50 court finance fee, and (6) a $40 State's Attorney fee. In *People v. Alghadi*, 2011 IL App (4th) 100012, ¶ 22, 960 N.E.2d 612, we stated that a defendant may only be assessed one of each of these fees, even when a defendant is charged with multiple counts within the same case number. Subsequent to *Alghadi*, however, the Second District adopted a different approach to addressing duplicate fees. In both *People v. Martino*, 2012 IL App (2d) 101244, 970 N.E.2d 1236, and *People v. Pohl*, 2012 IL App (2d) 100629, 969 N.E.2d 508, the Second District examined the language of the statute or ordinance imposing each fee to ascertain whether that fee could be imposed more than once. In doing so, the Second District concluded some of the fees could be assessed multiple times in one case. See *Martino*, 2012 IL App (2d) 101244, ¶ 56, 970 N.E.2d 1236 ("[t]he imposition of multiple County Jail Medical Costs Fund fees, court finance fees, State's Attorney's fees, and drug court/mental health court fines was proper").

¶ 59 In light of the Second District's decisions, we decline to apply *Alghadi* and will instead examine the language of the statutes authorizing the fees at issue in this case to determine whether duplicate fees could be imposed. In construing the statutes, our "primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning." *People v. Elliott*, 2014 IL 115308, ¶ 11, 4 N.E.3d 23. Our review is *de novo*. *Id.*

¶ 60 The record indicates the circuit clerk imposed six duplicate fees in this case. We address each fee in turn.

¶ 61                                              1. *Document Storage Fee*
¶ 62 First, the clerk imposed two $5 document storage fees. To defray the costs of a document storage system, section 27.3c(a) of the Clerks of Courts Act (Clerks Act) (705 ILCS 105/27.3c(a) (West 2010)) authorizes the clerk to charge a fee of between $1 and $15, which "shall be paid *** by the defendant in any felony, misdemeanor, traffic, ordinance, or conservation *matter*." (Emphasis added.) 705 ILCS 105/27.3c(a) (West 2010). In *Pohl*, the Second District concluded that the word "matter" could be used as a synonym for "case" or to

refer to an allegation in a pleading. *Pohl*, 2012 IL App (2d) 100629, ¶ 21, 969 N.E.2d 508 (citing Black's Law Dictionary 999 (8th ed. 2004)). It reasoned that "matter" was synonymous with "case" because one would not normally speak of a defendant charged with a crime as the defendant "in" an allegation. *Pohl*, 2012 IL App (2d) 100629, ¶ 21, 969 N.E.2d 508. We find the Second District's reasoning persuasive and thus conclude "matter" signifies "case"; accordingly, defendant could be assessed only one fee for his case, even though it resulted in multiple convictions.

¶ 63                                    2. *Automation Fee*

¶ 64        The clerk also imposed two $10 automation fees. Like section 27.3c, section 27.3a of the Clerks Act allows a circuit clerk, in order to defray the cost of maintaining an automated system, to collect a $1 to $15 fee, which "shall be paid *** by the defendant in any felony, traffic, misdemeanor, municipal ordinance, or conservation *case*." (Emphasis added.) 705 ILCS 105/27.3a(1) (West 2010). Thus, a defendant can only be assessed one automation fee per case. Accordingly, we vacate the duplicate automation fee.

¶ 65                                  3. *Circuit Clerk Fee*

¶ 66        The clerk also imposed two $100 circuit clerk fees. Section 27.1a(w)(1)(A) of the Clerks Act provides, in relevant part, as follows:

> "(1) The clerk shall be entitled to costs in all criminal and quasi-criminal cases from each person convicted or sentenced to supervision therein as follows:
>
>    (A) Felony complaints, a minimum of $40 and a maximum of $100." 705 ILCS 105/27.1a(w)(1)(A) (West 2010).

Thus, the plain language of section 27.1a(w)(1)(A) of the Clerks Act entitles the clerk to collect one fee per felony complaint. Because the counts the State filed constituted one felony complaint, the clerk could impose only one circuit clerk fee. Accordingly, we vacate one of the two circuit clerk fees.

¶ 67                                  4. *Court Security Fee*

¶ 68        The record likewise demonstrates the circuit clerk imposed two $25 court security fees. Section 5-1103 of the Counties Code (55 ILCS 5/5-1103 (West 2010)) authorizes a county board to enact a fee to defray court security expenses, specifying that "[i]n criminal, local ordinance, county ordinance, traffic and conservation *cases*, such fee shall be assessed against the defendant." (Emphasis added.) 55 ILCS 5/5-1103 (West 2010). Because the statute refers to cases and not individual convictions, the clerk could only impose one court security fee here. *Pohl*, 2012 IL App (2d) 100629, ¶ 12, 969 N.E.2d 508. Thus, we vacate the duplicate security fee.

### 5. *Court Finance Fee*

The circuit clerk additionally imposed two $50 court finance fees. Section 5-1101(c) of the Counties Code provides that a county board may enact "[a] fee to be paid by the defendant on a judgment of guilty or a grant of supervision," which "for a felony" is $50. 55 ILCS 5/5-1101(c) (West 2010). Thus, the plain language of section 5-1101(c) of the Counties Code allows a clerk to assess a fee on each judgment of guilty or grant of supervision. Here, the jury found defendant guilty of two counts; accordingly, the circuit clerk properly assessed two $50 court finance fees–one $50 fee for each of defendant's two counts.

### 6. *State's Attorney Fee*

Finally, the clerk assessed duplicate $40 State's Attorney fees. Section 4-2002(a) of the Counties Code entitles the State's Attorney to the following: "For each conviction in prosecutions on indictments for first degree murder, second degree murder, involuntary manslaughter, criminal sexual assault, aggravated criminal sexual assault, aggravated criminal sexual abuse, kidnapping, arson and forgery, $30. All other cases punishable by imprisonment in the penitentiary, $30." 55 ILCS 5/4-2002(a) (West 2010). As the Second District noted in *Martino*, section 4-2002(a) thus provides that the State's Attorney fee may be assessed "on a per-conviction basis." *Martino*, 2012 IL App (2d) 101244, ¶ 47, 970 N.E.2d 1236. Accordingly, the clerk's imposition of two State's Attorney fees was proper.

To summarize, we conclude the circuit clerk could impose only one of each of the following fees: (1) the document storage fee, (2) the automation fee, (3) the circuit clerk fee, and (4) the court security fee. However, the clerk could impose two court finance fees and two State's Attorney fees based on defendant being convicted of two felony counts.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment, vacate the improperly imposed fines and fees, and remand with directions for the trial court to impose any mandatory fines as authorized at the time of the offense and apply defendant's *per diem* credit against any creditable fines imposed on remand. As part of our judgment, we award the State its $50 statutory fee against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2010).

Affirmed in part and vacated in part; cause remanded with directions.